Kevin L. Hernandez, Esq.
Nevada Bar No. 12594
**LAW OFFICE OF KEVIN L. HERNANDEZ**
8872 S. Eastern Avenue, Suite 270
Las Vegas, Nevada 89123
P: (702) 563-4450
F: (702) 552-0408
kevin@kevinhernandezlaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JAMES STERN, an individual; <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN EXPRESS NATIONAL BANK; a national banking association; PATENAUDE & FELIX, A PROFESSIONAL CORPORATION; a foreign corporation; <br><br> Defendants. | Case No.: 2:20-cv-02135 <br><br><br> **COMPLAINT** <br><br> **JURY DEMAND** |

Plaintiff, James Stern ("Mr. Stern or Plaintiff"), by and through the undersigned counsel of record, and for his claims for relief against Defendants, American Express National Bank, formerly known as American Express Centurion Bank ("Amex"), and Patenaude & Felix, A Professional Corporation ("P&F") complains and alleges as follows:

## JURISDICTION AND VENUE

1. This action arises out of P&F's violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"), Amex's violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq*. ("ECOA"), Amex's Breach of Contract, and Amex's Breach of the Implied Covenant of Good Faith and Fair Dealing.

2. This court has jurisdiction over this matter under 15 U.S.C. § 1692k, 15 U.S.C. § 1691(d)(2) and (3), and U.S.C. § 1331.

3. This Court has supplemental jurisdiction over the Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing claims against Amex under 28 U.S.C. § 1367 because the ECOA, FDCPA, and contract claims are so related in the action that they form part of the same case or controversy under Article III of the United States Constitution. Specifically, each claim involves the same transaction, contract, and series of events related to Amex's breach of contract.

4. Under 28 U.S.C. § 1391(b), venue in this District is proper because Plaintiff and Defendants resided and/or do business in the District of Nevada.

5. Venue is also proper in this District because the acts and transactions that give rise to this action occurred, in substantial part, in the District of Nevada.

**PARTIES**

6. Plaintiff is an adult individual residing in the State of Nevada.

7. Plaintiff is a natural person obligated or allegedly obligated to pay a debt, and as such, is a "consumer" under 15 U.S.C. § 1692a(3).

8. Plaintiff is an "applicant" under 12 CFR § 1002.2(e) because he is a person who requested and/or received an extension of credit from Amex.

9. P&F is a foreign corporation whose principal purpose is the collection of consumer debts.

10. P&F regularly collects or attempts to collect consumer debts owed or due another, or asserted to be owed or due another, and therefore, P&F is a "debt collector" under 15 U.S.C. § 1692a(6).

11. P&F's principal purpose is to purchase, service, and collect defaulted consumer debts, and therefore, P&F is a "debt collector" under 15 U.S.C. § 1692a(6).

12. P&F's website further demonstrates its status as a "debt collector" under the FDCPA because the website provides the disclosures required under 15 U.S.C. 1692e(11), also

known as the "mini-Miranda" warning, i.e. "This communication is from a debt collector. This is an attempt to collect debt and any information obtained will be used for that purpose."

13. P&F is a licensed debt collector with the Nevada Financial Institutions Division.

14. P&F sought to collect a "debt" against Plaintiff under 15 U.S.C. § 1692a(5) and NRS § 649.010.

15. The Debt was purchased, assigned, or transferred to P&F for collection after the Debt was allegedly in a default status with the Creditor.

16. Within the past year, P&F wrongfully engaged in collection activities against Plaintiff for an alleged financial obligation arising out of an unsecured credit card (the "Debt").

17. The Debt was incurred with Amex ("Creditor") and was primarily for family, personal, or household purposes, which meets the definition of a "debt" under 15 U.S.C § 1692a(5).

18. Amex is a foreign corporation who, in the ordinary course of its business, regularly extends or offers credit to consumers.

19. Amex regularly extends, renews, or continues credit, and therefore, Amex is a "creditor" under 15 U.S.C. § 1691(e).

20. Amex's principal purpose is to decide to extend, renew, or continue credit, and therefore, Amex is a "creditor" under 15 U.S.C. § 1691(e).

**FACTUAL ALLEGATIONS**

21. Plaintiff reincorporates by reference all preceding paragraphs as if fully set forth herein.

**Amex's Racist Statements to Mr. Stern**

22. Mr. Stern was an Amex customer for over 35 years.

23. Mr. Stern maintained a perfect payment history with Amex for over 35 years.

24. In March 2017, Mr. Stern used Amex's travel concierge service to purchase first-class tickets through Hawaiian Airlines for $3,858.00 using Account Ending in 5-62003 (the "Account").

25. Shortly after booking the flight, Mr. Stern's mother became ill, forcing him to cancel the trip with approximately 60 days' notice to Amex.

26. Rather than working with Mr. Stern in light of his perfect payment history for 35 years, the Amex representative he spoke with refused to reimburse the trip expense.

27. Making matters worse, the Amex representative made racially insensitive remarks to Mr. Stern regarding his Japanese heritage (his mother is of Japanese descent).

28. The Amex representative referenced the Japanese attacks on Pearl Harbor and asked "jokingly" whether Mr. Stern's mother was present during the attacks.

29. The Amex representative's racist remarks caused Mr. Stern to suffer emotional distress and anguish.

**The Justice Court Litigation and Settlement**

30. On February 5, 2018, Amex sued Mr. Stern frivolously in Las Vegas Justice Court in a case entitled *American Express Centurion Bank v. James C. Stern* [18C002704], for a balance on the Account that he did not owe (the "Justice Court Lawsuit").

31. On April 19, 2019, Mr. Stern and Amex entered into a Settlement Agreement whereby Amex agreed to release the inaccurate balance alleged in the Justice Court Lawsuit in full, to dismiss the Justice Court Lawsuit with Prejudice, and to remove any reference to the Debt from Mr. Stern's national credit profiles (the "Settlement Agreement").

32. Amex and P&F failed to release the Debt as required under the Settlement Agreement.

**Post-Litigation Credit Application and Collection Actions**

33. On August 23, 2020, Mr. Stern applied for an Amex Platinum Card.

34. Mr. Stern's application for credit with Amex permitted Amex to obtain a subscriber copy of his credit report.

35. On August 28, 2020, Amex sent a letter to Mr. Stern denying the application because, it claimed, "[Amex] canceled one or more of [Mr. Stern's] previous American Express Card accounts."

36. The "previous American Express Card account" that Amex refers to is the card that was subject to the Justice Court Lawsuit, which arose out of Amex's racist comments to Mr. Stern.

37. The "previous American Express Card account" that Amex refers to is the card that was subject to the Justice Court Lawsuit for which Amex agreed to release the balance in full and delete any associated credit reporting under the Settlement Agreement.

38. On September 3, 2020, Mr. Stern called Amex to discuss its illegal credit denial.

39. During his September 3, 2020 call to Amex, Mr. Stern spoke with an Amex team manager named Lohit [Employee ID DTSGA08].

40. Lohit advised Mr. Stern that he could not understand why Amex denied his credit application.

41. Lohit advised Mr. Stern he would communicate with underwriting regarding the credit denial.

42. Underwriting advised Lohit that the denial was based, in part, on the fact that Mr. Stern purportedly owes $8,123.97 to Amex when this is not true.

43. P&F failed to report the release of the balance for the Account as required under the Settlement Agreement.

44. Up to the date of this Complaint, P&F continues to communicate to Amex that the Account has a balance due and owing when it does not.

45. P&F's failure to communicate to Amex that the Account has no balance caused, in part, Amex's credit denial against Mr. Stern.

## FIRST CLAIM FOR RELIEF

**[Violations of the FDCPA; 15 U.S.C. § 1692, et seq. against P&F]**

46. Plaintiff reincorporates by reference all preceding paragraphs as if fully set forth herein.

47. P&F violated 15 U.S.C. § 1692e by engaging in false, deceptive, and misleading representations in connection with the collection of the Account by falsely reporting to Amex

1   that the Account had a balance due and owing when the Account was released in full under the

2   Settlement Agreement.

3       48.    P&F violated 15 U.S.C. § 1692e(2)(A) by falsely representing the character,

4   amount, and legal status of the Account when it failed to report to Amex that the Account was

5   released in full under the Settlement Agreement.

6       49.    P&F violated 15 U.S.C. § 1692f by using unfair and unconscionable means to

7   attempt to collect the Account, including without limitation, continuing to report that the

8   Account had a balance due and owing, and in doing so humiliated and belittled Plaintiff.

9       50.    The foregoing acts and omissions of P&F constitute multiple intentional, reckless

10  and/or negligent violations of the FDCPA, including every one of the above-cited provisions.

11      51.    As a result of the above-referenced violations by P&F, Plaintiff is entitled to

12  statutory damages, plus actual damages to be proven at the time of trial in this matter.

13      52.    Plaintiff suffered actual harm as a direct and proximate result of P&F's actions

14  through the embarrassment, intrusion, invasion of privacy, and wasted time associated with

15  P&F's collection tactics referenced in this Complaint.

16      53.    Plaintiff has been forced to retain the Law Office of Kevin L. Hernandez to

17  pursue these claims and is therefore entitled to recover reasonable attorney's fees plus costs

18  incurred under 15 U.S.C. § 1692k.

19      54.    Plaintiff may have suffered damages in other ways and to other extents not

20  presently known to Plaintiff, and not specified herein.

21      55.    Plaintiff reserves the right to assert additional facts and damages not referenced

22  herein, and/or to present evidence of the same at the time of trial.

23  **SECOND CLAIM FOR RELIEF**

24  **[Violations of the ECOA against Amex]**

25      56.    Plaintiff reincorporates by reference all preceding paragraphs as if fully set forth

26  herein.

27      57.    Mr. Stern is an "applicant" under 12 C.F.R. 1002.2(e) because he requested an

28  extension of credit from Amex.

58. Amex is a "creditor" under 12 C.F.R. 1002.2(e) because it regularly participates in credit decisions, including setting the terms of credit, in the ordinary course of business.

59. Mr. Stern had an "adverse action" taken against him by Amex under 12 C.F.R. 1002.2(c) when Amex denied Mr. Stern's credit application.

60. On September 21, 2020, Mr. Stern advised Amex of its improper denial of credit under the ECOA.

61. Amex failed and refused to reconsider its credit denial.

62. As someone who is of Japanese heritage, Mr. Stern is a member of a protected class.

63. Amex's credit application denial resulted from racist comments and actions of Amex's representative toward Mr. Stern, referenced above.

64. Amex denied Mr. Stern's application for credit based on his race, color, and national origin.

65. In light of Mr. Stern's credit score and history, Amex should have granted his application for credit.

66. Amex denied Mr. Stern's credit application despite the fact that he was qualified.

67. Amex has inadequate procedures to comply with the ECOA's adverse action notice and record-keeping requirements.

68. Mr. Stern has suffered damages by reason of Amex's violations of the ECOA.

## THIRD CLAIM FOR RELIEF

### [Breach of Contract against Amex]

69. Plaintiff reincorporates by reference all preceding paragraphs as if fully set forth herein.

70. Mr. Stern entered into a valid and enforceable contract with Amex, referenced above as the Settlement Agreement.

71. Mr. Stern performed all terms, covenants, and conditions under the Settlement Agreement.

1    72.  Under Section 2 of the Agreement, Amex agreed to "a full release of the

2 underlying debt."

3    73.  Amex breached the Settlement Agreement by failing and refusing to release the

4 underlying debt associated with the Justice Court Lawsuit.

5    74.  Amex's breaches of the Settlement Agreement were unexcused.

6    75.  As a result of Amex's breaches of the Settlement Agreement, Mr. Stern has

7 suffered damages, including without limitation, credit denials, loss of financial standing,

8 embarrassment, and emotional distress.

9    76.  As a result of Amex's breaches of the Settlement Agreement, Mr. Stern has been

10 forced to retain the services of legal counsel for which Plaintiff is entitled to recover such costs

11 and expenses from Amex under Section 7 of the Settlement Agreement.

12    77.  Section 7 of the Settlement Agreement provides, in pertinent part, that the

13 "prevailing party shall be entitled to attorneys' fees and the costs in connection with any

14 enforcement proceedings."

15    78.  Mr. Stern's damages were a foreseeable consequence of Amex's breach of the

16 Settlement Agreement.

### FOURTH CLAIM FOR RELIEF

**[Breach of the Implied Covenant of Good Faith and Fair Dealing against Amex]**

19    79.  Plaintiff reincorporates by reference all preceding paragraphs as if fully set forth

20 herein.

21    80.  Mr. Stern entered into a valid and enforceable contract with Amex, referenced

22 above as the Settlement Agreement.

23    81.  Every contract in Nevada includes an implied covenant of good faith and fair

24 dealing, under which each party must act in a manner that is faithful to the purpose of the

25 contract and the justified expectations of the other party.

26    82.  Under the Settlement Agreement, Amex agreed to release the debt in full.

83. The parties understood that the debt release in the Settlement Agreement released the Account in its entirety to ensure that Mr. Stern's personal and financial records were clear of the debt so that it had no adverse effect on his finances in the future.

84. Mr. Stern performed all terms, covenants, and conditions of the Settlement Agreement.

85. Amex breached the implied covenant of good faith and fair dealing by inducing Mr. Stern to resolve the Justice Court Lawsuit with an agreement to release the debt in full and by failing to do so.

86. Amex breached the implied covenant of good faith and fair dealing by failing and/or refusing to take all actions reasonable and necessary to release the debt in full as required under the Settlement Agreement.

87. Amex breached the implied covenant of good faith and fair dealing by failing and refusing to release the debt in full as required under the Settlement Agreement.

88. As a result of Amex's breach of the implied covenant of good faith and fair dealing, Mr. Stern has suffered damages, including without limitation, credit denials, loss of financial standing, embarrassment, and emotional distress.

89. As a result of Amex's breach of the implied covenant of good faith and fair dealing, Mr. Stern has been forced to retain the services of legal counsel for which Plaintiff is entitled to recover such costs and expenses from Amex

**WHEREFORE,** Plaintiff prays for relief as follows:

1. For an award reimbursing Plaintiff for reasonable attorney's fees, costs, and interest incurred;
2. For an award of actual damages under 15 U.S.C. § 1692k(a)(1);
3. For an award of statutory damages;
4. For an award of punitive damages under 15 U.S.C. 1691e(b); and

///

///

///

1    5.    For such other further relief as the court deems proper.

Dated: November 19, 2020

**LAW OFFICE OF KEVIN L. HERNANDEZ**

*/s/ Kevin L. Hernandez*     .
Kevin L. Hernandez, Esq.
Nevada Bar No. 12594
8872 S. Eastern Avenue, Suite 270
Las Vegas, Nevada 89123
P: (702) 563-4450
F: (702) 552-0408
kevin@kevinhernandezlaw.com
*Attorney for Plaintiff*